FILED
2018 Oct-09 AM 10:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CLARENCE ROBERT HOGLUND, JR., <br><br> Plaintiff, <br><br> v. <br><br> CHARTER COMMUNICATIONS, INC., *et al.*, <br><br> Defendants. | 2:18-cv-00968-LSC |

**Memorandum of Opinion**

Plaintiff Clarence Robert Hoglund, Jr. ("Hoglund") filed this action against Charter Communications, Inc. ("Charter"), Thomas M. Rutledge, and Employees of the Gardendale Alabama Office of Charter Communications (collectively "Defendants"), alleging violations of the Sherman Antitrust Act, the Robison-Patman Act, Americans with Disabilities Act, Hobbs Act, Fourteenth Amendment of the United States Constitution, and Ala. Code § 13A-6-193. Before this Court is Defendants' motion to dismiss. (Doc. 8.) The motion has been fully briefed and is now ripe for review. For the reasons stated below, Defendants' motion to dismiss (doc. 8) is due to be granted.

## I. BACKGROUND[1]

Hoglund is a seventy-six-year-old disabled veteran. In January 2014, Hoglund moved to a condominium complex in Trussville, Alabama. He specifically chose this complex because he would be able to install a Dish satellite to watch television. Hoglund's landlord allowed him to install the satellite, and between January 2014 and June 2016, Dish provided Hoglund with uninterrupted television service.

In June 2016, Hoglund requested Charter internet service. When a Charter technician came to Hoglund's condominium, he disabled the Dish satellite. The technician told Hoglund that he had been instructed to disconnect any cable connection not provided by Charter. After calling Charter and receiving an apology, Hoglund apparently had the satellite repaired. According to Hoglund, this scene repeated itself multiple times until he moved in April 2017. Every few weeks, Charter would come and disconnect the Dish satellite and Hoglund would then have the satellite repaired. This resulted in Hoglund losing television service for days at a time.

---

[1] In evaluating a motion to dismiss, this Court "accept[s] the allegations in the complaint as true and construe[s] the facts in the light most favorable to the plaintiff." *Johnson v. Midland Funding, LLC*, 823 F.3d 1334, 1337 (11th Cir. 2016). The following facts, are therefore, taken from the allegations contained in Hoglund's Complaint, and the Court makes no ruling on their veracity.

When Hoglund contacted Charter's Gardendale, Alabama office, he was told that Charter owned all of the cable lines in his condominium complex so that only Charter could provide television service to its residents. Following Hoglund's conversation with Charter's Gardendale office, he made numerous customer service complaints and wrote to Charter CEO Thomas Rutledge about the satellite disconnection, but according to Hoglund, those complaints were falsely categorized as complaints about Charter's internet service. Hoglund also filed a complaint with the Federal Communications Commission, which he alleges Charter responded to by stating that all of Hoglund's prior complaints related to internet service problems and not his Dish satellite. Hoglund claims that his issues with Charter forced him to move out of his condominium and into a single-family residence. He contends that this move has caused him serious financial, emotional, and physical harm because he now lives farther from friends, medical facilities, and shopping areas and has had to hire someone to help maintain his house.

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet this standard, the complaint must state enough facts to raise the right to relief "above a speculative level." *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings based upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations will not suffice. *Id.* at 555, 557. A party need not specifically plead each element in his or her cause of action, but the pleading must contain "enough information regarding the material elements of a cause of action to support recovery under some viable legal theory*.*" *Am. Fed'n of Labor & Cong. Of Indus. Orgs. v. City of Miami, Fla.*, 637 F.3d 1178, 1186 (11th Cir. 2011). Ultimately, the Court must be able to draw a reasonable inference from the facts that the other party is liable. *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215 (11th Cir. 2012). The Court must construe pleadings broadly and resolve inferences in the nonmoving party's favor. *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006).

Moreover, the Court must liberally construe Hoglund's complaint because he submitted his complaint *pro se*. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, while a *pro se* plaintiff will be given greater leniency, "[t]his leniency . . . does not require or allow courts to rewrite an otherwise deficient pleading in order to sustain an action." *Thomas v. Pentagon Fed. Credit Union*, 393 F. App'x. 635, 637 (11th Cir. 2010).

To survive a motion to dismiss, the plaintiff's complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. To be plausible, the claim for relief must contain "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Id.* at 556. If this Court decides that the facts pleaded by plaintiff do not state a plausible claim, the complaint is due to be dismissed. *Id.* at 570. To have facial plausibility, the plaintiff's complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. DISCUSSION

Hoglund first brings claims against Charter under Sections One and Two of the Sherman Antitrust Act. To bring a claim under Section One, 15 U.S.C. § 1, a plaintiff must allege (1) an agreement between two or more persons or business entities, (2) designed to achieve an unlawful objective, (3) that actually restrains trade. *See Aquatherm Indus., Inc. v. Fla. Power & Light Co.*, 145 F.3d 1258, 1262 (11th Cir. 1998). Moreover, the plaintiff must define both the relevant product and geographic markets. *See Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1336 (11th Cir. 2010). Section Two of the Sherman Antitrust Act, 15 U.S.C. § 2, prohibits (1) monopolization; (2)

attempted monopolization; and (3) conspiracies to monopolize. *See* 15 U.S.C. § 2. Like claims brought under Section One, the failure to define either the product or geographic boundaries of a relevant market is fatal to a monopolization claim. *See Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns. Inc.*, 376 F.3d 1065, 1074 (11th Cir. 2004).

For antitrust purposes, the geographic market "is the area in which the product or its reasonably interchangeable substitutes are traded." *T. Harris Young & Assoc., Inc. v. Marquette Elecs., Inc.*, 931 F.2d 816, 823 (11th Cir. 1991). In other words, "[t]he relevant market is the 'area of effective competition' in which competitors generally are willing to compete for consumer potential . . . ." *Am. Key Corp. v. Cole Nat. Corp.*, 762 F.2d 1569, 1581 (11th Cir. 1985).

Here, Hoglund does not specifically define the relevant product or geographic markets. Construing Hoglund's complaint liberally, the Court finds that the relevant product market at issue is television and internet services. The closest Hoglund comes to defining the relevant geographic market is describing Charter's control over the cable lines in his condominium complex located at 811 Penny Lane, Trussville, Alabama. Common sense dictates that the relevant geographic market cannot be this narrow. Charter, Dish, and other television providers compete with each

other to service consumers throughout the United States and not just the occupants of Hoglund's condominium complex. Moreover, when the condominium residents signed their leases they had the ability to, as Hoglund did, inquire into the cable and internet services that would be available to them. If they wished for a provider other than Charter, they could have chosen to live somewhere else. Thus, at some point, Charter competed for the residents' business, and the condominium complex is not so isolated from the rest of the economy as to plausibly form a distinct geographic market. *See Wampler v. Sw. Bell Tel. Co.*, 597 F.3d 741, 746 (5th Cir. 2010) (finding that one multiple dwelling unit did not constitute a plausible geographic market because AT&T had to initially compete with other internet service providers to contract with the unit and those dissatisfied with AT&T's services could choose to live somewhere else). Accordingly, Hoglund's Sherman Act claims fail as a matter of law.

Additionally, Hoglund alleges that Charter violated Section 3 of the Robison-Patman Act, 15 U.S.C. § 13a, stating that Charter's actions denied him the benefits of competition. The Supreme Court has held that private causes of action may not be brought under this criminal statute. *See Nashville Milk Co. v. Carnation Co.*, 355 U.S. 373, 381 (1958). Thus, Hoglund may not bring a claim under 15 U.S.C. § 13a. Even assuming

Hoglund meant to bring this claim under Section 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a), his claim fails as a matter of law. To show a violation of this provision, a plaintiff must allege: "(1) That the defendant is engaged in commerce; (2) that, in the course of such commerce, the defendant has discriminated in price between different purchasers of commodities of like grade and quality; (3) that either or any of the purchases involved in such discrimination are in commerce; and (4) that there is likely to be a severe, adverse effect on competition." *Littlejohn v. Shell Oil Co.*, 483 F.2d 1140, 1143–44 (5th Cir. 1973).[2] Hoglund's complaint is bereft of facts or allegations that Charter ever engaged in price discrimination. Therefore, regardless of whether Hoglund is alleging a violation of Section 2(a) or Section 3 of the Robinson-Patman Act, this claim is due to be dismissed.[3]

Hoglund also asserts a claim under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*[4] A claim under Title III of

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions by the former Fifth Circuit prior to October 1, 1981.

[3] To the extent that Hoglund seeks damages under Section Four of the Clayton Act, he is not entitled to them because he has not sufficiently alleged violations of any underlying antitrust law. *See* 15 U.S.C. 15(a).

[4] The ADA has three sections. Title I regulates discrimination in the workplace. Title II prohibits discrimination by public entities. Title III prohibits discrimination by private entities in places of public accommodation. Although Hoglund does not specify which section of the ADA he claims Charter violated, Charter is neither a public entity nor Hoglund's workplace. Therefore, the Court will construe Hoglund's complaint as bringing a claim under Title III.

the ADA must allege (1) that the plaintiff is an individual with a disability; (2) that the defendant is a place of public accommodation; and (3) that the defendant denied the plaintiff full and equal enjoyment of the goods, services, facilities or privileges offered by defendant (4) on the basis of his disability. *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1299 (11th Cir. 2005). The ADA's definition of "public accommodation" does not include a business that provides services to private residences. *See* 42 U.S.C. § 12101(7). Also, Hoglund's complaint does not allege that Charter interrupted his Dish satellite service because of his disability. Thus, Hoglund fails to state a claim under Title III of the ADA.

Hoglund next attempts to bring a claim under the Hobbs Act, 18 U.S.C. § 1951, alleging that the disruption of his access to Dish's television services constituted robbery and that Charter's implied threat to continue disconnecting his Dish satellite amounted to extortion. The Hobbs Act is a criminal statute that prohibits robbery or extortion within the context of interstate commerce. *See* 18 U.S.C. § 1951(a). An implied private right of action under a federal statute may only be found when there is "clear evidence of Congress's intent to create a cause of action." *McDonald v. State Farm Bureau Life Ins. Co.*, 291 F.3d 718, 723 (11th Cir. 2002) (quoting *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1345 (11th Cir.

1997)). There is no evidence that Congress intended to create a private cause of action under the Hobbs Act. *See Wisdom v. First Midwest Bank, of Popular Bluff*, 167 F.3d 402, 409 (8th Cir. 1999) (holding that "neither the statutory language of 18 U.S.C. § 1951 nor its legislative history reflect an intent by Congress to create a private right of action"); *see also Brookhart v. Rohr*, 385 F. App'x. 67, 68 (3d Cir. 2010) ("The Hobbs Act provides only for criminal sanctions and not civil relief."). Therefore, Hoglund's claim under the Hobbs Act is due to be dismissed.

Next, Hoglund asserts a claim under the Fourteenth Amendment to the United States Constitution, alleging Charter's refusal to allow him to choose the television provider of his choice violated his civil rights. The Fourteenth Amendment "can be violated only by conduct that may be fairly characterized as 'state action.'" *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 924 (1982). It does not apply to the conduct of private parties unless those parties are acting on behalf of the state. *See Nat'l Broadcasting Co., Inc. v. Commc'ns Workers of Am.*, 860 F.2d 1022, 1024–25 (11th Cir. 1988). Charter is a private company. Hoglund's complaint contains no facts or allegations that Charter disconnected his Dish satellite at the request of the state. Thus, the complaint fails to state a claim under the Fourteenth Amendment.

Finally, Hoglund brings a claim under Ala. Code § 13A-6-193, alleging that Charter's employees abused him by disrupting his access to the Dish satellite. Section 13A-6-193 is an Alabama criminal statute that prohibits elder abuse and neglect. *See* Ala. Code § 13A-6-193. Under Alabama law, "[o]ne claiming a private right of action within a statutory scheme must show clear evidence of a legislative intent to impose civil liability for a violation of the statute." *Century Tel of Ala. v. Dothan/Houston Cty. Commc'ns Dist.*, 197 So. 3d 456, 463 (Ala. 2015) (quoting *Am. Auto. Ins. Co. v. McDonald*, 812 So. 2d 309, 311 (Ala. 2001)). There is no evidence that this elder abuse statute was intended to create a private cause of action. Thus, Hoglund has not sufficiently stated a claim under the Alabama elder abuse statute.

In sum, Hoglund's complaint fails to state a claim under the Sherman Antitrust Act, Robinson-Patman Act, Americans with Disabilities Act, Hobbs Act, Fourteenth Amendment, or Ala. Code § 13A-6-193. To the extent that Hoglund would be able to assert any claim against Charter, it would be an Alabama state law claim for tortious interference with property rights. This Court doubts that it would have subject matter jurisdiction over such a claim. Because Hoglund's complaint fails to state a claim upon which relief can be granted, it is due to be dismissed.

## IV. Conclusion

For the reasons stated above, Defendants' motion to dismiss (doc. 8) is due to be GRANTED and this case DISMISSED WITH PREJUDICE. A separate order consistent with this opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** on October 9, 2018.

L. Scott Coogler
United States District Judge

194800